COOPER, Respondent, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 19, 1907.

1. WATERCOURSES: Railroads: Drains. In an action against a railroad company for damages caused by its failure to ·comply with the requirements of section 1110, Revised Statutes 1899, the petition alleged that the "roadbed of the defendant, as constructed, dammed up the swale, depression or natural drain," across plaintiff's land, and thereby obstructed the natural flow of the surface water, and that the defendant "neglected to dig or construct along the side of its dump any lateral ditch to conduct said surface water from the property of plaintiff to a certain natural drain or watercourse which crosses the track of the defendant a quarter of a mile below plaintiff's property, which natural drain or watercourse would have been and still is sufficient to carry off all surface water," etc. *Held*, these were sufficient allegations that the construction of the roadbed of the defendant obstructed the natural flow of surface water and that there were ditches or natural watercourses into which such obstructed surface water would have been carried if the lateral drains had been constructed to permit the introduction of evidence in support of the allegations.

2. ——: ——: ——. Under section 1110, Revised Statutes 1899, the "watercourse, drain or ditch" into which the railroad company is required to drain the surface water obstructed by its roadbed, need not be a running stream, but it may be a lake or slough, if it is adequate to receive and furnish outlet for the surface water.

3. PRACTICE: Function of Jury: Question of Law. It is improper to instruct the jury to find for plaintiff if the defendant has failed to perform its duty to the plaintiff "as required by statute," because the instruction commits to the jury the judicial function of interpreting the statute.

Appeal from Butler Circuit Court.—*Hon. Jas. L. Fort,* Judge.

REVERSED AND REMANDED.

*F. L. Parker* and *James Orchard* for appellant.

Our contention is that the court erred in refusing to give defendant's demurrer at the close of the evidence and also in overruling defendant's motion in arrest of judgment. The petition is fatally defective. In order to make out a prima facie case of negligence against the appellant under this section for failing to construct ditches or drains it is necessary to aver in the petition and prove upon the trial, 1st. That the construction of the roadbed obstructed the natural flow of the surface water; 2d. There were ditches or drains or natural water courses into which said obstructed surface water could have been conveyed by lateral ditches constructed along the sides of the roadbed; 3d. That the appellant failed to construct such ditches, by reason of which respondent's lands were overflowed by obstructed surface water and damages ensued. Delapp v. Railroad, 69 Mo. App. 572; Graves v. Railroad, 69 Mo. App. 574.

*Phillips & Phillips* for respondent.

STATEMENT.—After introductory matter, the petition is as follows:

"Plaintiff for her cause of action states that she is now, and was at all the times hereinafter mentioned, the owner in fee of the following described real estate, lying being and situate in the town of Harviell, county of Butler and State of Missouri, to-wit: All of lots eight and nine in block one in Mangold's re-survey of the town of Harviell.

"Plaintiff further states, that there is now, and was at all times hereinafter mentioned, situated upon said lots a residence of the value of one thousand dollars, together with stables, sidewalks, out buildings and other improvements incidental and necessary to the use of said property as a residence.

"Plaintiff further states that in the northern portion or part of said real estate there was and still is a swale, depression or natural drain, which, connecting with the drain some two hundred yards west of the above-described premises, carried and drained from the above land of this plaintiff all surface water not only falling upon her land as aforesaid, but also that which fell on the higher land to the east of plaintiff's above described property."

The petition further alleges, in substance, that in the year 1902, defendant constructed its roadbed by erecting an embankment along the west line of plaintiff's lots, thereby damming up the swale or drain, in the northern part of plaintiff's lots, and obstructing the western flow of surface water coming therefrom, causing the water to back up and remain permanently on her said lots, and that defendant has failed, neglected and refused to construct lateral ditches along the east side of its roadbed, to carry the surface water from plaintiff's lots to a natural drain or watercourse, crossing defendant's track one-fourth mile below plaintiff's lots, which drain and watercourse would have been and is amply sufficient to carry off all surface water deflected on said lots by the railroad embankment. The damages are laid at one thousand dollars. The answer was a general denial.

The evidence shows that a portion of plaintiff's lots were in a swale, which runs west to the ditch and that this ditch runs south to a slough, called the "Red Sea;" that before the road was constructed, the surface water that fell and flowed on plaintiff's lots from adjoining lots passed off through the swale into the ditch west and hence through the ditch south into the Red Sea. This swale was crossed by defendant's roadbed, and plaintiff's evidence tends to show there was no vent or outlet under the embankment for the passage of the surface water from plaintiff's lots, and that by reason

of the embankment the surface water was backed up and caused to stand on the lots during the greater portion of the year. The evidence also tends to show that filth and refuse from adjoining lots was washed upon plaintiff's lots, in time of heavy rains and overflow, that this filth could not flow off on account of the embankment and after the water was soaked up by the ground emitted offensive odors. The evidence further tends to show that if lateral ditches had been constructed on the west side of defendant's roadbed to the slough south, the surface water would have flowed through it into the slough. The lots were improved and their value prior to the building of the embankment was estimated by plaintiff's witnesses to be one thousand dollars, and the depreciation caused by the embankment at from five to eight hundred dollars.

Defendant's evidence tends to show that the land on which the town of Harviell is situated is almost level, and at the time defendant constructed its roadbed it put a ten-inch tile under it, sufficient to carry off all surface water from six acres of ground, and that no more than two acres, including plaintiff's lots, would be drained through this tile; that the outlet west of plaintiff's lots, and south of the point where the roadbed crossed the swale, was higher than the lots and for this reason the water would not run from the lots through the tile. Defendant's evidence also tends to show that plaintiff's property was not damaged or depreciated in value on account of the roadbed. In respect to the tile, plaintiff's evidence tends to show the west end of it was higher than the east end, and the tile was broken and filled up with dirt and debris so the water could not pass through it.

The verdict and judgment were for plaintiff for five hundred dollars, from which defendant duly appealed.

BLAND, P. J. (after stating the facts)—1. At the close of plaintiff's evidence and again at the close of all

the evidence, defendant moved for a peremptory instruction to the jury to find for defendant. The contention is that the refusal of the court to grant these requests is erroneous in that the petition fails to state a cause of action for the reasons: first, the petition failed to allege that the construction of the roadbed obstructed the natural flow of surface water; and second, it fails to allege that there were ditches, or drains, or natural watercourses, into which said obstructed surface water could have been carried by lateral ditches constructed along the west side of the roadbed. The petition alleges the roadbed, as constructed, dammed up the swale, depression, or natural drain, and thereby obstructed the natural flow of the surface water, therefore, there is no merit in the first objection. In respect to the other objection, the petition alleges that defendant "failed, refused and neglected to dig or construct along the side of its said dump any lateral ditch or drain to conduct said surface water as aforesaid from the property of the plaintiff to a certain natural drain or watercourse which crosses and did at all times herein mentioned, the track of the defendant some quarter of a mile below plaintiff's said property, which said natural drain or watercourse would have been and still is amply sufficient to have carried off all surface water so deflected upon the property of the plaintiff." While it is not stated in so many words, that ditches, had they been constructed, would have conveyed the surface water to the natural drain mentioned in the petition, the inference, from what is stated, is that they would have done so, and this inference should be drawn in support of the judgment. And we think the allegation was sufficient to let in the evidence of plaintiff's witness, Farmer, who testified, over the objection of defendant, that if the ditches had been constructed, they would have carried the surface water from plaintiff's land to the natural drain mentioned in the petition and described in the evidence as a slough.

123. App.—10

2. The slough, to which plaintiff's witnesses testified a ditch could be dug to carry off the surface water, the evidence shows, is what the witnesses call "the Red Sea," described as a slough or pool of water. What outlet, if any, the Red Sea has is not stated in the evidence, and defendant contends that as it is described as a pool of water, it is neither a watercourse drain, or ditch into which surface water might be drained, and for this reason plaintiff cannot recover.

Section 1110, R. S. 1899, upon which the action is bottomed, makes it the duty of railroad companies, within three months after the completion of their roads through any county in the State "to cause to be constructed and maintained suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains, or watercourses, so as to afford sufficient outlet to drain and carry off the water along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad." Under the statute, it is immaterial whether the receptacle of the surface water to flow through the railroad ditches is a running stream, another ditch or a body of water, as for instance, a lake, if it is adequate to receive the water, and therefore furnish an outlet for the surface water from the territory drained by the railroad ditch or ditches.

3. For plaintiff, the court instructed the jury that if they found from the evidence the "defendant failed, refused and neglected to dig or construct along the sides of the said dump, as aforesaid, as required by statute any lateral ditch or drain to conduct said surface water, as aforesaid, from the property of the plaintiff," etc., they should find for plaintiff. The instruction committed to the jury the judicial function of reading and interpreting the statute upon which the action is grounded. This was palpable error, calling for a reversal of the judgment. [Cockrell v. McIntyre, 161 Mo. 59, 61 S. W. 648;

State v. Hardelein, 169 Mo. 579, 70 S. W. 130; Hulett v. Railway, 80 Mo. App. 86; Goodson v. Embleton, 106 Mo. App. 1. c. 83, 80 S. W. 22.]

The judgment is reversed and the cause remanded. All concur.